**PURCELL et al. v. SUMMERS et al.**
No. 4876.

Circuit Court of Appeals, Fourth Circuit.
March 9, 1942.

J. Morgan Stevens, of Jackson, Miss., and Walter McElreath, of Atlanta, Ga. (Henry R. Sims, of Orangeburg, S. C., R. T. Jaynes, of Walhalla, S. C., R. E. Babb, of Laurens, S. C., and Orville A. Park, of Macon, Ga., on the brief), for appellants.

Collins Denny, Jr., of Richmond, Va., and C. T. Graydon, of Columbia, S. C., for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order dismissing a suit on the ground that state courts had first acquired jurisdiction of the res thought to be involved. The suit was instituted by certain bishops of the Methodist Church, suing in behalf of themselves and other members of that organization. Its purpose was: (1) to obtain a declaratory judgment to the effect that the union of the Methodist Episcopal Church, the Methodist Episcopal Church, South, and the Methodist Protestant Church into one organization known as the Methodist Church was valid and that the Methodist Church had succeeded thereby to the rights and properties of the merged organizations and particularly those of the Methodist Episcopal Church, South, and (2) to restrain defendants, sued as representatives of former members of the Methodist Episcopal Church, South, who denied the validity of the union and were claiming to constitute the Methodist Episcopal Church, South,

and to be entitled to its rights and properties, from using the name of that organization or any name similar thereto. The suits in state courts thought by the judge below to defeat the jurisdiction here were eight suits brought by officers and members of local Methodist churches against dissident members, who denied the right of the united Methodist Church to use and control the respective local church properties and claimed the right, as former members of the Methodist Episcopal Church, South, to use the name and local properties of that organization. The purpose of these suits was primarily to determine the right to control over the local properties involved, although injunction against the use of the name by the dissident members was also asked and the rights arising out of the union of the three churches were necessarily in issue.

Defendants filed a plea to the jurisdiction on three grounds: (1) that no rights of property were involved in the suit but merely ecclesiastical questions, as to which the court was without jurisdiction; (2) that the suit did not involve the jurisdictional amount of exceeding $3,000; and (3) that the jurisdiction of state courts had already attached to the property involved in the controversy. The judge below held with plaintiffs on the first and second grounds but was of opinion that the court was without jurisdiction because of the pendency in state courts of the actions relating to the eight local properties, 34 F.Supp. 421. Defendants rely here upon the points decided against them in the court below as well as upon the point decided in their favor.

■ We think that the lower court correctly held that the complaint presented a controversy justiciable in the courts and that the amount necessary to federal jurisdiction was involved. The questions involved in the case are not mere points of theology or church organization, but questions upon which property rights of great magnitude are dependent. Each of the Christian bodies which united for the formation of the Methodist Church owned valuable rights in property and had rights of great monetary value in their names and in the organizations which they had built up. The allegation of the bill is that the net value of the property owned by the Methodist Church as a result of the union exceeds $656,000,000; that it has permanent funds of over $14,000,000 and annuity funds of over $7,000,000; that its current askings for foreign missions exceed $3,900,000 and for home missions $2,500,000; that during the past twelve months it has raised for ministerial support and other purposes a sum in excess of $80,000,000; and that it has a membership of approximately 7,800,000, with 139 educational institutions, 83 hospitals and many other properties. It is further alleged that the value of the properties owned by the Methodist Episcopal Church, South, prior to the union was $400,000,000, that the value of local church buildings belonging to that church in the state of South Carolina was in excess of $7,000,000, that these properties were held by trustees, boards, corporations, commissions and other agencies for the benefit of the church and its members, and that as a result of the union of the churches these properties are held for the benefit of the united church and its members and the religious and charitable undertakings in which they are engaged. The contention of defendants is that the legal ownership of these properties is not in the church or its membership but in various boards, trustees, commissions and corporations, but this does not meet the question involved; for plaintiffs contend that, while legal title to the properties is held by the boards, trustees, commissions and corporations, the right to the beneficial use of the properties is in the church organization for the religious and charitable purposes which it has undertaken, and that the right of control over them depends upon the validity of the union into which the three churches have entered, since the trustees, boards, commissions and directors of corporations are appointed by the church through its proper governing agencies. Even in the case of property held in trust for local congregations, the contention of plaintiffs is that the trustees hold it for that part of the congregation which adheres to the united church. See Zollman on American Church Law, par. 548. There can be no question, therefore, but that in asking an adjudication of the validity of the union and a declaration that the united church has succeeded thereby to the rights and properties of the Methodist Episcopal Church, South, the case presents a justiciable controversy affecting property rights of great value. Cf. Helm v. Zarecor, 222 U.S. 32, 32 S.Ct. 10, 56 L.Ed. 77; Smith v. Swormstedt, 16 How. 288, 14 L.Ed. 942.

■ We agree, too, with the judge below that the case is one in which the grant-

ing of a declaratory judgment by the federal courts would be peculiarly appropriate. The federal courts represent the sovereignty to which all of the parties to the controversy owe allegiance, which is not true of any state court that might be selected; and the broad power of the federal courts with respect to declaratory judgments is especially suited to the settlement of a controversy of this character between Christian people, who are seeking, not strife, but a final adjudication of rights by which they may abide. The declaratory judgment will expeditiously determine a fact or status "on which a whole complex of rights may depend". It will remove uncertainty and insecurity from the legal relations involved and thus "clarify, quiet and stabilize them before irretrievable acts have been undertaken". Borchard, Declaratory Judgments, 2d Ed., pp. 283, 284.

■ And we think it equally clear that the case, from the standpoint of amount involved, is well within the federal jurisdiction. It is alleged that the defendants are representatives of an organization which has as its purpose the appropriation of the name of the Methodist Episcopal Church, South, and the use of properties formerly belonging to that church but now, as a result of the union, belonging to the Methodist Church. It is well settled that the measure of jurisdiction in a suit for injunction is the value to plaintiff of the right which he seeks to protect. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Glenwood Light Co. v. Mutual Light Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174; Hunt v. N. Y. Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821. And the rights of plaintiffs here in the church properties brought in controversy by the schism which is the basis thereof gives ample support to the jurisdiction. Cf. Gibbs v. Buck, supra. While the schism here is alleged to extend only to the membership of the church in the state of South Carolina, it may easily spread to other states and affect all the properties which belonged to the Methodist Episcopal Church, South, prior to the union, unless the questions involved are promptly settled; and, as pointed out above, if we look only to the value of the church properties in South Carolina which may be affected by the schism, we find that their value exceeds $7,000,000. And aside from the value of the church properties affected by the schism, the right involved in the use of the name of one of the great religious bodies merged by the union has a value, because of its association and background and the loyalties attaching to it, of many times the jurisdictional amount prescribed by statute; and it is the protection of this name and the prevention of its use by defendants and their associates which is one of the primary objects of the suit. It is alleged that the value of the use of the name is in excess of $3,000, and that the damage which will be caused plaintiffs by the confusion and dissension resulting from the use of the name by the defendants will be in excess of $25,000. These allegations are not denied in the answer; and we find nothing in the record which would justify their being ignored as a basis of jurisdiction.

■ We do not think, however, as did the court below, that the federal court is without jurisdiction to grant relief under the complaint filed herein because of the pendency of the eight suits respecting local properties filed in the state courts. The objects of suit are different, the parties are different, and, even though the state courts have exclusive jurisdiction over the specific properties involved in those suits, this does not preclude the granting of the relief asked in this suit, except with respect to those properties. As pointed out above this is a suit the primary purpose of which is to determine the validity of the union under which the organizations and properties of the three religious organizations were merged and the legal rights arising therefrom with respect to church properties, and to protect the name of one of the uniting bodies from being used by dissident members of that body as the name of an independent and rival organization in a part of the territory in which the united church is operating. The eight state court suits, on the other hand, have been instituted for the protection of local properties and do not involve the general rights or properties of the church. This suit is brought by the general officers of the united church, suing for themselves and other members of that church, and is brought against the duly elected representatives of the rival organization as representative of that organization. The state court suits were brought by members and officers of local units of the church against persons formerly associated with those units who were setting up rival claims to local properties. At the time those suits were instituted there had been no state or sectional organization of the persons seek-

ing to appropriate the name of the Methodist Episcopal Church, South, but merely an attempt on the part of some persons in local congregations to withhold the local properties from the control of the united church. Since they were instituted, the dissident members have held a general meeting for the purpose of perpetuating the Methodist Episcopal Church, South, as an organization separate and distinct from the united church, and have formed an organization under the name of the South Carolina Conference of the Methodist Episcopal Church, South. The defendants, here are sued as members and representatives of that organization. It is clear that no judgment entered in any of the state suits could settle the broad questions which plaintiffs seek to have settled in this suit in such way as to be binding either upon the united church as a whole or upon the rival organization represented by defendants. Cf. Watson v. Jones, 13 Wall. 679, 715, 717, 20 L.Ed. 666.

■ In so far as the state court suits seek to control the administration of trusts relating to the local properties or to control those properties themselves, they are properly treated as suits in rem; and, in as much as they were brought by representatives of the united church against persons claiming in behalf of the rival body, we think that a sufficient identity of parties is shown to bring into play the rule that, where the jurisdiction of a state court has first attached to property, a federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction. Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. ——; Princess Lida v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285; Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Palmer v. Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435. This does not mean, however, that the federal court is without power to render a judgment between the same parties with respect to other matters; and it is no objection to such exercise of jurisdiction that it may result in the determination of questions which are involved in the state court litigation.

■ The present suit, in so far as it seeks a declaratory judgment as to the validity of the union and merger of the churches and the protection of the church name against a rival organization, is in no sense an action in rem even though, as in a declaration of legitimacy, rights of property may be dependent thereon; and the pendency of the state court actions, although involving similar or the same questions, could not oust the federal court's jurisdiction. It is well settled in the federal courts that it is no ground for dismissing an action in personam, that there is another aetion pending between the same parties respecting the same subject matter. Princess Lida v. Thompson, supra; Kline v. Burke Construction Co., supra. A fortiori, there is no ground for dismissal where the parties are different and the subject matter is different, and only a part of the property which could be affected by the decision in the federal suit is involved in the state actions. And this is true notwithstanding that the state actions are actions in rem; for the rule is that pendency of an action in rem in one court does not preclude the granting in another court of relief not in conflict with the first court's control of the specific property to which the jurisdiction in rem has attached. Wannamaker v. Eaves, 4 Cir., 79 F.2d 553; Newberry v. Davison Chemical Co., 4 Cir., 65 F.2d 724, 728; Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920. The course to be followed, in view of the actions in rem pending in the state courts, therefore, is that prescribed in Watson v. Jones, supra, 13 Wall. 679, 720, 20 L.Ed. 666, i.e. the federal court should proceed to grant any relief appropriate under the pleadings which will not interfere with the specific properties which have been brought within the jurisdiction of the state courts.

■ Many questions have been raised in the briefs and arguments which it is unnecessary to decide here, since only the question of jurisdiction is involved. To what extent the decision of the court first pronouncing judgment is binding upon other courts in the situation here presented, is not before us, nor is the question as to the effect to be given a decision of the state court, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, in a case such as this, where the questions involved are between citizens of many different states and affect organizations transcending state lines. As the judge below did not pass upon the merits of the case but dismissed it for lack of jurisdiction, the jurisdictional question is the only one before us. Stephenson

v. Equitable Assurance Society, 4 Cir., 92 F.2d 406, 410.

For the reasons stated, the court below erred in dismissing the suit. The order of dismissal will accordingly be reversed and the cause will be remanded for further proceedings not inconsistent herewith.

Reversed.